# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCOTT BAKER, | : |
| Plaintiff, | : Civ. No. 17-12095 (PGS-DEA) |
| v. | : |
| JOY CAMARILLO, et al., | : OPINION |
| Defendants. | : |

**PETER G. SHERIDAN, U.S.D.J.**

## I. INTRODUCTION

This matter comes before the Court on Defendants New Jersey Department of Corrections ("NJDOC") and New Jersey State Prison's ("NJSP") motion to dismiss Plaintiff Scott Baker's complaint. (ECF No. 2). For the following reasons, the motion is granted.

## II. BACKGROUND

Petitioner is currently incarcerated in NJSP, Trenton, New Jersey. He filed a complaint in Mercer County Superior Court, which defendants New Jersey Department of Corrections ("DOC") and NJSP (collectively state defendants) removed to federal court on November 28, 2017. (ECF No. 1).

According to the Complaint, Plaintiff has been incarcerated since at least 2016 and has been taking Lisinopril for high blood pressure. He was taken to UMDNJ on May 13, 2016 for a spinal injection procedure unrelated to his high blood pressure, at which time a surgeon told him Lisinopril was a "bad drug." (Compl. ¶ 17). The surgeon told Plaintiff he should be taken off Lisinopril as it "was dangerous and was not working." (Compl. ¶ 18). Plaintiff asked defendant Joy Camarillo, an APN at NJSP, to prescribe a different medication and she agreed. (Compl. ¶

19). Plaintiff alleges that instead of giving him a different medicine, Camarillo increased his dosage of Lisinopril. (Compl. ¶ 20).

On June 9, 2016, Plaintiff's lip began to swell and he had difficulty swallowing. He had a headache and trouble breathing. He assumed he was getting sick and went to bed early. He awoke early the next morning unable to breathe. (Compl. ¶¶ 21-22). A nurse saw Plaintiff's distress and notified the Wing Officer that Plaintiff had to go to the prison clinic immediately. (Compl. ¶¶ 23-24). The Wing Officer called defendant Supervising Officer Doe, who told Plaintiff he could not go to the clinic until after count ended approximately one hour later. (Compl. ¶ 25). Plaintiff went to the clinic at the conclusion of count at roughly 6:30 a.m. on an emergency pass. (Compl. ¶ 27). Plaintiff needed assistance to the clinic because he collapsed on his way there. (Compl. ¶ 29). Plaintiff passed out shortly after arriving at the clinic and had an oxygen mask on his face and IV tube when he woke up. The medical staff sent him to St. Francis where he was treated for an allergic reaction to Lisinopril. (Compl. ¶¶ 30-31). He alleges he suffers from recurring nightmares and PTSD and is afraid to take any medication. (Compl. ¶ 32). He claims this incident was never reported or written up properly. (Compl. ¶ 34).

Plaintiff originally filed this complaint in the New Jersey Superior Court, Law Division, Mercer County. The state defendants removed the complaint to this Court on November 28, 2017. (ECF No. 1). On December 5, 2017, the state defendants filed a Motion to Dismiss the complaint. (ECF No. 2). The Court conducted oral argument on January 22, 2018, with Plaintiff appearing by telephone. The state defendants presented their arguments, and Plaintiff indicated he had not received a copy of the state defendants' moving papers. The Court ordered the state defendants to serve Plaintiff by January 29, 2018, and Plaintiff to file his opposition by February 13, 2018. (ECF No. 7). Plaintiff has not filed any opposition to the motion.

## III. LEGAL STANDARDS

When considering a motion to dismiss a complaint for failure to state a claim, Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the non-moving party. A motion to dismiss may be granted only if the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Although Rule 8 does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

In reviewing the sufficiency of a complaint, the Court must "tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (alterations in original) (internal citations and quotation marks omitted). "[A] complaint's allegations of historical fact continue to enjoy a highly favorable standard of review at the motion-to-dismiss stage of proceedings." *Id.* at 790.

## IV. DISCUSSION

Plaintiff raises the following claims: (1) violation of the New Jersey Civil Rights Act ("NJCRA"), N.J. STAT. ANN. § 10:6-2(d) and/or 42 U.S.C. § 1983 and/or battery; (2) deliberate indifference; (3) medical malpractice; (4) deliberate indifference – failure to protect; (5) state intentional infliction of emotional distress; (6) state constitutional claims; (7) federal constitutional tort; (8) state constitutional tort; (9) breach of duty to report misconduct; (10)

negligence; (11) cruel and unusual punishment; (12) violations of public policy; (13) substantive due process violations; (14); New Jersey Patient Safety Act; (15) New Jersey Medical Care Access and Responsibility and Patient First Act; (16) New Jersey Patient's Bill of Rights; (17) medical malpractice – gross deviation from the standard of care; (18) medical malpractice – lack of informed consent; (19) breach of contract causing damage to intended third party beneficiary; and, (20) punitive damages.

**A. Federal Constitutional Claims**

The state defendants, a New Jersey agency and state prison, argue that they may not be sued under § 1983 because they are immune from suit under the Eleventh Amendment of the Constitution. The Eleventh Amendment to the United States Constitution provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. As such, the Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought. *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

However, the state defendants removed this case to federal court. "[A] State's voluntary appearance in federal court amount[s] to a waiver of its Eleventh Amendment immunity[.]" *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 619 (2002). *See also Lombardo v. Pa., Dep't of Pub. Welfare*, 540 F.3d 190, 198 (3d Cir. 2008) ("[V]oluntary removal waives a State's immunity from suit in a federal forum[.]"). The state defendants have therefore consented to this Court's jurisdiction over the matter.

Neither the NJDOC nor NJSP are not "persons" subject to liability under 42 U.S.C. § 1983. *See Lombardo*, 540 F.3d at 198 (noting "removing State retains all defenses it would have enjoyed had the matter been litigated in state court, including immunity from liability"); *Moncalvo v. City of Plainfield*, No. 16-03513, 2017 WL 653258, at *2 (D.N.J. Feb. 16, 2017) ("In other words, the State, by removing the case, has not waived its argument that it is not a suable 'person' under § 1983 . . . ."). In order to set forth a prima facie case under § 1983, a plaintiff must show: "(1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). A State, agency, or an official of the State acting in his or her official capacity, is not a "person" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 (1989). Prisons are also not considered "persons" under § 1983. *Crawford v. McMillan*, 660 F. App'x 113, 116 (3d Cir. 2016) ("[T]he prison is not an entity subject to suit under 42 U.S.C. § 1983.") (citing *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973)); *Grabow v. Southern State Corr. Facility*, 726 F. Supp. 537, 538–39 (D.N.J. 1989) (correctional facility is not a "person" under § 1983). Therefore, Counts One, Two, Four, Seven, Eleven, and Thirteen are dismissed with prejudice to the extent they raise federal constitutional claims against the state defendants because they are not "persons" under § 1983.

**B. New Jersey Civil Rights Act**

Defendants are also immune from suit under the NJCRA. The NJCRA is New Jersey's analog to § 1983 and requires that a defendant be a "person" to be subject to suit. N.J. STAT. ANN. § 10:6-2(c).

"This district has repeatedly interpreted NJCRA analogously to § 1983." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011) (citing cases). As with § 1983, New Jersey state courts have held that the State, its agencies, and state officials in their official capacities are not "persons" within the meaning of the NJCRA and are immune from suit. *Brown v. State*, 124 A.3d 243, 255–56 (N.J. Super. Ct. App. Div. 2015) ("Given that the Legislature did not choose to include an express waiver of sovereign immunity in the Civil Rights Act and that the State enjoys immunity under the analogous § 1983, we conclude that the State is immune from a suit for damages under the Civil Rights Act."), *rev'd on other grounds*, 165 A.3d 735 (N.J. 2017).

Counts One and Eight are dismissed with prejudice.

## C. New Jersey Tort Claims Act

The state defendants further argue they are immune under the NJTCA and that Plaintiff has failed to provide the required notice.

Under the NJTCA, "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances." N.J. STAT. ANN. § 59:2-2(a).[1] "Although a public entity is generally immunized from suits based on discretionary acts, the public entity may be liable for 'negligence arising out of acts or omissions of its employees in carrying out their ministerial functions.'" *Ogborne v. Mercer Cemetery Corp.*, 963 A.2d 828, 833 (N.J. 2009) (quoting N.J. STAT. ANN. § 59:2–3(d)). However, "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." N.J. STAT. ANN. § 59:2–10. "Thus, there can be no vicarious liability by

---

[1] "'Public entity' includes the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State." N.J. STAT. ANN. § 59:1-3.

6

a public entity for intentional torts committed by its employees; that is, with respect to such intentional torts, the theory of respondeat superior does not apply." *Hoag v. Brown*, 935 A.2d 1218, 1230 (N.J. Super. Ct. App. Div. 2007).

Aside from professional negligence claims, Plaintiff raises four tort claims: battery, intentional infliction of emotional distress, breach of duty to report misconduct (negligence); and negligence. The relevant state employee is Supervising Officer Doe, who "injected himself into the medical treatment plan of Plaintiff when he not only ignored Plaintiff's severe medical need, but blocked him from received necessary life-saving treatment and forced him to not be rushed to the hospital for over an hour, without cause" and "failed to direct his subordinates to immediately transfer Plaintiff to the prison clinic when he was notified of [Plaintiff's] medical emergency." *See* Count Ten, Compl. ¶¶ 109-16. Battery and intentional infliction of emotional distress are intentional torts. *See Perna v. Pirozzi*, 457 A.2d 431, 438 (1983) ("[B]attery connotes an intentional invasion of another's rights . . . ."). Defendants are therefore immune from suit under the NJTCA for these claims.

Although the state defendants are not immune from suit on Plaintiff's negligence claims, Counts Nine and Ten, Plaintiff has not sufficiently pled that he has complied with the notice provisions of the NJTCA. See N.J. STAT. ANN. § 59:8-3 ("No action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter."). The NJTCA requires plaintiffs to file a notice of tort claim with the public entity being sued within 90 days of the incident and to wait for a response before filing a lawsuit. N.J. STAT. ANN. § 59:8-8(a). Suits that do not comply with the notice provision are "forever barred from recovering against a public entity or public employee." N.J. STAT. ANN. § 59:8-8. The notice requirement is "a jurisdictional

precondition to filing suit." *Ptaszynski v. Uwaneme*, 853 A.2d 288, 294 (N.J. Super. Ct. App. Div. 2004) (internal quotation marks omitted). *See also Guzman v. City of Perth Amboy*, 518 A.2d 758, 760 (N.J. Super. Ct. App. Div. 1986) ("Timely statutory notice is a prerequisite."). However, a plaintiff may be permitted to file a late notice of tort claim by making a motion to the court within a year of the incident "supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file" a timely notice of tort claim. N.J. STAT. ANN. § 59:8-9.

Nothing in the complaint indicates whether Plaintiff filed a timely notice of tort claim or was granted permission to file a late notice of tort claim.[2] Therefore, he has not sufficiently pled this Court's jurisdiction over his NJTCA claims. Counts Nine and Ten are dismissed without prejudice. Plaintiff may move to reinstate the claims within 45 days if he can show that he complied with the notice provision or was granted permission to file a late notice of tort claim. Failure to move to reinstate the claims within 45 days will convert the dismissal of the negligence claims into a dismissal with prejudice without further action by the Court.

**D. Professional Negligence Claims**

In Counts Three, Seventeen, and Eighteen, Plaintiff raises claims of medical malpractice. Under New Jersey law, "[a] malpractice action is based on the improper performance of a professional service that deviated from the acceptable standard of care." *Zuidema v. Pedicano*, 860 A.2d 992, 998 (N.J. Super. Ct. App. Div. 2004). A plaintiff alleging medical malpractice must plead facts setting forth "(1) the applicable standard of care; (2) a deviation from that standard of care; and (3) that the deviation proximately caused the injury." *Gardner v. Pawliw*, 696 A.2d 599, 608 (N.J. 1997). The Court will dismiss these claims with prejudice against the

---

[2] For purposes of this motion to dismiss, the Court has not considered the exhibits attached to the state defendants' motion.

state defendants because they are not medical professionals to whom the applicable standard of care would apply.

**E. Violations of Public Policy**

Counts Twelve, Fourteen, Fifteen, and Sixteen allege violations of public policies, including N.J. STAT. ANN. § 30:1B-3(2)(b)(Legislative Findings); N.J. STAT. ANN. § 30:4-6 (Duties of Chief Executive Officer); N.J.A.C § 10A:1-1.1(a)(1) ("The functions of the DOC are to: Protect the public and provide for the custody, care, discipline, training and treatment of persons committed to State correctional facilities."); N.J.A.C. § 10A:1-2.1 (scope); New Jersey's Patient Safety Act ("PSA"), N.J. STAT. ANN. §§ 26:2H–12.23 - 12.25; the New Jersey Medical Care Access and Responsibility and Patients First Act, N.J. STAT. ANN. §§ 2A:53A-37 to -42; and the Hospital Patients Bill of Rights Act, N.J. STAT. ANN. §§ 26:2H-12.7 to -12.11.

The statute and administrative code provisions concerning the Department of Corrections do not provide for a private right of action.[3] When a statute does not expressly provide a private right of action, New Jersey courts "have been reluctant to infer" such a right. *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 773 A.2d 1132, 1142 (N.J. 2001). The factors used by courts to determine whether a statute confers an implied private right of action include whether: "(1) plaintiff is a member of the class for whose special benefit the statute was enacted; (2) there is any evidence that the Legislature intended to create a private right of action under the statute; and (3) it is consistent with the underlying purposes of the legislative scheme to infer the existence of such a remedy." *Id.* at 1143. While courts give weight to all three factors, "the primary goal has almost invariably been a search for the underlying legislative intent." *Ibid.* (quoting *Jalowiecki v. Leuc*, 440 A.2d 21, 26 (N.J. Super. Ct. App. Div. 1981)).

---

[3] The Court will not address the other alleged public policies because they relate to medical providers, which the state defendants are not.

As a state prisoner, Plaintiff is member of the class intended to benefit from the Legislature's setting forth the responsibility of the NJDOC, *see, e.g.,* N.J. STAT. ANN. § 30:1B-3(c) ("The incarcerated offender should be protected from victimization within the institution."), but so are members of the general public, *see* N.J. STAT. ANN. § 30:1B-3(a)(1) ("There is a need to: Provide maximum-security confinement of those offenders whose demonstrated propensity to acts of violence requires their separation from the community."). The purpose of these provisions are to provide the statutory authority for the NJDOC's actions and general responsibilities. There is no evidence that the New Jersey Legislature intended to create a private cause of action for damages with these statutes and administrative code provisions. The Court therefore concludes there is no implied private cause of action.

Counts Twelve, Fourteen, Fifteen, and Sixteen are dismissed with prejudice.

**F. Breach of Contract**

Plaintiff alleges the medical service providers breached their contract with the State of New Jersey to provide prisoners with adequate health care. He asserts a cause of action as an intended third party beneficiary.

Other courts in this district have held that prisoners have no standing to sue for any alleged breach of contract between the State and its medical care providers; the only party with standing to sue for a breach of contract would be the State itself. *See, e.g., Ali v. Univ. Corr. Health Care*, No. 17-1285, 2017 WL 3736652, at *3 (D.N.J. Aug. 30, 2017); *Garcia v. Corr. Med. Serv.*, No. 13-1250, 2014 WL 346625, at *6 (D.N.J. Jan. 30, 2014) ; *Maqbool v. University Hosp. of Medicine & Dentistry of N.J.*, No. 11-4592, 2012 WL 2374689, at *4 (D.N.J. June 13, 2012); *Green v. Corzine*, No. 09-1600, 2011 WL 735745, at *4 (D.N.J. Feb. 22, 2011). The Court agrees and will dismiss the breach of contract claim.

## V. CONCLUSION

For the reasons stated above, the motion to dismiss is granted. All claims other than Counts Nine and Ten are dismissed with prejudice. Plaintiff may move to reinstate Counts Nine and Ten within 45 days if he can show that he either filed a timely notice of tort claim or was granted permission to file a late notice of tort claim. Failure to move to reinstate Counts Nine and Ten within 45 days will convert the dismissal without prejudice into a dismissal with prejudice without further action by the Court.

An appropriate order follows.

DATED: March 6, 2018

PETER G. SHERIDAN
United States District Judge