NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCOTT BAKER, | : |
| Plaintiff, | : Civ. No. 17-12095 (PGS-TJB) |
| v. | : |
| JOY CAMARILLO, et al., | : MEMORANDUM |
| Defendants. | : |

**PETER G. SHERIDAN, U.S.D.J.**

This matter comes before the Court on a motion for summary judgment filed by Defendants Joy Camarillo, Ihuoma Nwachukwu, Rutgers University ("Rutgers"), and University Behavioral Health Care ("UBHC"). (ECF No. 17). Plaintiff Scott Baker opposes the motion. (ECF No. 24). For the following reasons, the motion is denied. The Court will dismiss the Eighth Amendment claim against Dr. Nwachukwu without prejudice.

I.

Petitioner is currently incarcerated in New Jersey State Prison ("NJSP"), Trenton, New Jersey. He filed a complaint in Mercer County Superior Court, which was removed to federal court on November 28, 2017. (ECF No. 1).

According to the Complaint, Plaintiff has been incarcerated since at least 2016 and has been taking Lisinopril for high blood pressure. He was taken to UMDNJ on May 13, 2016 for a spinal injection procedure unrelated to his high blood pressure, at which time a surgeon told him Lisinopril was a "bad drug." (Compl. ¶ 17). The surgeon told Plaintiff he should be taken off

Lisinopril as it "was dangerous and was not working." (Compl. ¶ 18). Plaintiff asked defendant Joy Camarillo, an APN at NJSP, to prescribe a different medication and she agreed. (Compl. ¶ 19). Plaintiff alleges that instead of giving him a different medicine, Camarillo doubled his dosage of Lisinopril. (Compl. ¶ 20).

On June 9, 2016, Plaintiff's lip began to swell and he had difficulty swallowing. He had a headache and trouble breathing. He assumed he was getting sick and went to bed early. He awoke early the next morning unable to breathe. (Compl. ¶¶ 21-22). A nurse saw Plaintiff's distress and notified the Wing Officer that Plaintiff had to go to the prison clinic immediately. (Compl. ¶¶ 23-24). The Wing Officer called defendant Supervising Officer Doe, who told Plaintiff he could not go to the clinic until after count ended approximately one hour later. (Compl. ¶ 25). Plaintiff went to the clinic at the conclusion of count at roughly 6:30 a.m. on an emergency pass. (Compl. ¶ 27). Plaintiff needed assistance to the clinic because he collapsed on his way there. (Compl. ¶ 29). Plaintiff passed out shortly after arriving at the clinic and had an oxygen mask on his face and IV tube when he woke up. The medical staff sent him to St. Francis where he was treated for an allergic reaction to Lisinopril. (Compl. ¶¶ 30-31). He alleges he suffers from recurring nightmares and PTSD and is afraid to take any medication. (Compl. ¶ 32). He claims this incident was never reported or written up properly. (Compl. ¶ 34).

On March 8, 2018, the Court granted an unopposed motion to dismiss filed by the New Jersey Department of Corrections and NJSP. (ECF No. 11). The Court permitted Plaintiff to move to reinstate Counts Nine and Ten, which raised claims under the New Jersey Tort Claims Act ("NJTCA"), within 45 days if he could show that he either filed a timely notice of tort claim or was granted permission to file a late notice of tort claim. (*Id.*). Plaintiff never filed an

amended complaint on those claims. Per the terms of the Court's order, all claims against the New Jersey Department of Corrections and NJSP are now dismissed with prejudice. (*Id.*).

The remaining defendants now move for summary judgment. They argue the Plaintiff has not provided the affidavits of merit required under New Jersey state law, nor has he served them with a notice of tort claim. (ECF No. 17-2 ¶¶ 19-20). They also argue Plaintiff failed to exhaust his administrative remedies before filing suit. (*Id.* ¶ 21). The Court issued a *Paladino* notice informing the parties that it may resolve factual issues, such as exhaustion, as part of the summary judgment motion on May 2, 2019. (ECF No. 28). The parties were permitted to submit any additional evidence, but neither party submitted additional materials.

The matter is now ripe for decision.

## II.

Under the Federal Rules of Civil Procedure, "[s]ummary judgment is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.' In making that determination, a court must view the evidence 'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (quoting Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). A "genuine" dispute of "material" fact exists where a reasonable jury's review of the evidence could result in "a verdict for the non-moving party" or where such fact might otherwise affect the disposition of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

# III.

**A. Affidavit of Merit**

Defendants argue the state tort claims against them must be dismissed because Plaintiff did not comply with New Jersey's affidavit of merit statute ("AOM statute"), N.J.S.A. § 2A:53A–26, et seq.

"The stated purpose of the AOM statute, is laudatory—to weed out frivolous claims against licensed professionals early in the litigation process." *Meehan v. Antonellis*, 141 A.3d 1162, 1169 (N.J. 2016) (internal citation omitted). The AOM statute states in relevant part:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.

N.J.S.A. § 2A:53A–27. "The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause." *Id.* "The submission of an appropriate affidavit of merit is considered an element of the claim. Failure to submit an appropriate affidavit ordinarily requires dismissal of the complaint with prejudice." *Meehan*, 141 A.3d at 1169.

Defendants assert that Plaintiff was required to serve Dr. Nwachukwu and Nurse Camarillo with affidavits authored by a board-certified internal medical physician and advanced practice nurse, respectively. (ECF No. 17-3 at 15). Plaintiff concedes he failed to serve an AOM on Defendants but argues for the application of one of the two equitable exceptions to the 120-day deadline: extraordinary circumstances. *See Ferreira v. Rancocas Orthopedic Assocs.*, 836

A.2d 779, 783 (N.J. 2003). He asserts that he has been unable to obtain an affidavit of merit because he is incarcerated and is not represented by an attorney.

Courts have "'yet to define the full scope of extraordinary circumstances as an equitable remedy for failure to comply with the statute.'" *Vitale v. Carrier Clinic, Inc.*, 409 F. App'x 532, 534 (3d Cir. 2010) (quoting *Paragon Contractors, Inc. v. Peachtree Condo. Ass'n*, 997 A.2d 982, "986 (N.J. 2010)). "It is clear, however, that '[w]hat constitutes an "extraordinary circumstance" is a fact-sensitive analysis; in short, the circumstances must be "exceptional and compelling."'" *Brown v. United States*, No. 15-7734, 2017 WL 1064665, at *6 (D.N.J. Mar. 21, 2017) (quoting *Seldon v. Rebenack, Aronow & Mascolo, LLP*, 541 F. App'x 213, 215 (3d Cir. 2013)) (alteration in original). New Jersey favors deciding cases on their merits, and "the 'extraordinary circumstances' exception aims to 'temper the draconian results of an inflexible application of the statute' by granting certain latitude to non-compliant plaintiffs." *Fontanez v. United States*, 24 F. Supp. 3d 408, 416 (D.N.J. 2014) (quoting *Ferreira*, 836 A.2d at 783).

Plaintiff sought the appointment of counsel on two occasions: July 24, 2018 and November 15, 2018. (ECF Nos. 14 & 23). In his motion, he argued that it was "extremely difficult" to proceed without an attorney due to his indigency and incarceration. (ECF No. 14 at 3). "Plaintiff's indigency, his incarceration and his failed attempts to obtain legal assistance are extraordinary circumstances that excuse his failure to timely submit an affidavit of merit in support of his malpractice claim." *Smith v. United States*, No. 15-7834, 2018 WL 4096209, at *5 (D.N.J. Aug. 28, 2018) (citing *Brown*, No. 15-7734, 2017 WL 1064665, at *7 (where prisoner plaintiff sought appointment of pro bono counsel in medical malpractice case during the relevant statutory period in which to obtain an affidavit of merit under New Jersey law, extraordinary circumstances existed to warrant an extension of time to file an affidavit of merit); *Fontanez*, 24

F. Supp. 3d at 416 (prisoner's pro se status, his incarceration and his attempts to obtain an affidavit of merit were extraordinary circumstances excusing the failure to timely file an affidavit of merit)). *See also Montgomery v. Pinchak*, 294 F.3d 492, 506 (3d Cir. 2002) (vacating summary judgment and remanding to district court after concluding counsel should have been appointed in medical malpractice case).

Therefore, the Court will deny Defendant's motion for summary judgment without prejudice. "A district court may sua sponte appoint pro bono counsel to an indigent civil litigant under 28 U.S.C. ¶ 1915." *Smith*, No. 15-7834, 2018 WL 4096209, at *5 (citing *Tabron v. Grace*, 6 F.3d 147, 156 (3d Cir. 1993)). "Plaintiff's case cannot continue unless he obtains an affidavit of merit from an appropriately licensed expert, which he requires the assistance of an attorney to obtain. Therefore, the court will appoint Plaintiff pro bono counsel and extend the time in which Plaintiff must submit an affidavit of merit." *Id.*

Defendants' motion for summary judgment is denied without prejudice.

**B. Notice of Tort Claim**

Defendants further argue that Plaintiff's state tort claims should be dismissed with prejudice because he failed to serve a notice of tort claim. The Court denies summary judgment on this basis.

"Summary judgment is appropriate when the moving party demonstrates that there is no genuine dispute of material fact and the evidence establishes its entitlement to judgment as a matter of law." *United States v. Commander*, 734 F. App'x 824, 829 (3d Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). "Federal Rule of Civil Procedure 56 requires summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 322). "In determining the existence of a disputed issue of material fact on a motion for summary judgment, all inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983).

Defendants have not supported their summary judgment motion with any evidence that Plaintiff failed to serve a notice of tort claim. (ECF No. 17-2 at 5 ¶ 20). Plaintiff certified that he did file a tort claim notice. (ECF No. 24 at 6).[1] Because counsel is to be appointed, the Court will deny summary judgment on this basis without prejudice. Counsel must submit the notice of tort claim within 30 days of appointment. In the event the notice is not submitted, defendants may renew their motion.

### C. Exhaustion of Administrative Remedies

Defendants also argue Plaintiff failed to exhaust his administrative remedies before filing this lawsuit. Under the Prison Litigation Reform Act, ("PLRA"), prisoners must exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1854–55 (2016) (quoting 42 U.S.C. § 1997e(a)). "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Id.* at 1856 (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2007)). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). This includes constitutional claims, *Woodford*, 548 U.S. at 91 n.2, and "applies to all inmate suits about prison life, whether they involve general circumstances or

---

[1] This distinguishes this motion from the motion to dismiss filed by the New Jersey Department of Corrections, which Plaintiff did not oppose.

particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion must be proper, meaning "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88). "A prisoner must exhaust these remedies 'in the literal sense[;]' no further avenues in the prison's grievance process should be available." *Smith v. Lagana*, 574 F. App'x 130, 131 (3d Cir. 2014) (quoting *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004)). A district court may decide whether plaintiffs exhausted their administrative remedies without a jury even if there are disputed facts after providing notice to the parties and an opportunity to submit further evidence. *Paladino v. Newsome*, 885 F.3d 203, 211 (3d Cir. 2018); *Small v. Camden Cty.*, 728 F.3d 265, 270 (3d Cir. 2013). The Court issued a notice and order providing the parties additional time to submit materials on May 2, 2019. (ECF No. 28). Neither party elected to submit further materials.

"Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff." *Small*, 728 F.3d at 268. Defendants have failed to meet their burden of proof. Their statement of material facts do not cite to any portion of the record supporting their statement that Plaintiff failed to exhaust his remedies. (ECF No. 17-2 at 5 ¶ 21). They have not submitted any admissible evidence by anyone with knowledge of the prison's grievance procedure and/or Plaintiff's submissions. There is no evidence attesting to the reliability of NJSP's recordkeeping system. *See Paladino*, 885 F.3d at 211 (holding that success of failure to exhaust argument based on the absence of any form "depends on the reliability of

8

the Prison's recordkeeping system"). In the absence of competent evidence on the exhaustion issue, the Court denies summary judgment on this ground.

**D. Failure to State a Claim**

Defendants' final argument is that Plaintiff has not stated a deliberate indifference claim. The Court agrees as to defendant Nwachukwu, but disagrees as to Nurse Camarillo, Rutgers, and UBHC.

To state a violation of the Eighth Amendment right to adequate medical care, a convicted and sentenced inmate must plead facts indicating: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). "Deliberate indifference is a 'subjective standard of liability consistent with recklessness as that term is defined in criminal law.'" *Natale*, 318 F.3d at 582 (quoting *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000) (en banc)). The Third Circuit has found deliberate indifference "'where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.'" *Parkell v. Danberg*, 833 F.3d 313, 337 (3d Cir. 2016) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

Plaintiff alleges a surgeon recommended that he be taken off of Lisinopril because it was a "bad drug." Plaintiff conveyed the recommendation to Nurse Camarillo, and she allegedly agreed to change Plaintiff's medication. (ECF No. 1-4 at 7 ¶19). However, she instead allegedly doubled Plaintiff's Lisinopril dosage without Plaintiff's knowledge or consent. (*Id.* at 7 ¶ 20). Shortly thereafter, Plaintiff suffered a life-threatening allergic reaction. (*Id.* at 9 ¶¶ 31-32). Nurse

9

Camarillo's alleged doubling of the dosage after Plaintiff conveyed the surgeon's recommendation that Plaintiff not take Lisinopril could be found to be deliberately indifferent to Plaintiff's health.

Plaintiff has also sufficiently stated supervisory claims against Rutgers and UBHC. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "Rather, state actors are liable only for their own unconstitutional conduct. With this principle in mind, we have previously identified two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 135 S. Ct. 2042 (2015). "Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)) (alteration in original). "The second theory of liability provides that a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Id.*

Plaintiff has not identified how Dr. Nwachukwu is personally responsible for any policies or customs resulting in his injuries. 42 U.S.C. § 1997e(c)(1) (permitting courts to "dismiss any action brought with respect to prison conditions . . . if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted" on their own motions). However, he has alleged Rutgers and UBHC had policies regarding prescribing

medication and other cost-cutting measures. (ECF No. 1-4 at 11 ¶¶ 40-41). This is sufficient to state and Eighth Amendment claim.

V.

For the reasons stated above, the Court will dismiss the Eighth Amendment claim against Dr. Nwachukwu without prejudice. The Court will appoint counsel and extend the time to file an affidavit of merit 120 days from counsel's appointment.

DATED: July 1, 2019

_____
PETER G. SHERIDAN
United States District Judge