UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SCOTT BAKER,

        Plaintiff,

v.

JOY CAMARILLO, et al.,

        Defendants.

Civ. No. 17-12095 (PGS) (DEA)

OPINION

**PETER G. SHERIDAN, U.S.D.J.**

## I. INTRODUCTION

Plaintiff, Scott Baker ("Plaintiff" or "Baker"), is a state prisoner currently incarcerated at the New Jersey State Prison ("NJSP") in Trenton, New Jersey. He is proceeding through appointed counsel with a civil rights complaint against several remaining defendants, namely: (1) Joy Camarillo; (2) Ihuoma Nwachukwu; (3) University Behavioral Health; and (4) Rutgers, the State University of New Jersey (hereinafter collectively the "Moving Defendants"). Presently pending before this Court is the Moving Defendants' motion for summary judgment. For the following reasons, the motion is granted.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff initially filed suit *pro se* in state court in June, 2017. That state case was removed to this Court in November, 2017. As this Court previously noted in a prior opinion, the complaint alleges as follows:

> According to the Complaint, Plaintiff has been incarcerated since at least 2016 and has been taking Lisinopril for high blood pressure. He was taken to UMDNJ on May 13, 2016 for a spinal injection procedure unrelated to his high blood pressure, at which time a surgeon told him Lisinopril was a "bad drug." (Compl. ¶ 17). The surgeon told Plaintiff he should be taken off Lisinopril as

> it "was dangerous and was not working." (Compl. ¶ 18). Plaintiff asked defendant Joy Camarillo, an APN at NJSP, to prescribe a different medication and she agreed. (Compl. ¶ 19). Plaintiff alleges that instead of giving him a different medicine, Camarillo doubled his dosage of Lisinopril. (Compl. ¶ 20).
>
> On June 9, 2016, Plaintiff's lip began to swell and he had difficulty swallowing. He had a headache and trouble breathing. He assumed he was getting sick and went to bed early. He awoke early the next morning unable to breathe. (Compl. ¶¶ 21-22). A nurse saw Plaintiff's distress and notified the Wing Officer that Plaintiff had to go to the prison clinic immediately. (Compl. ¶¶ 23-24). The Wing Officer called defendant Supervising Officer Doe, who told Plaintiff he could not go to the clinic until after count ended approximately one hour later. (Compl. ¶ 25). Plaintiff went to the clinic at the conclusion of count at roughly 6:30 a.m. on an emergency pass. (Compl. ¶ 27). Plaintiff needed assistance to the clinic because he collapsed on his way there. (Compl. ¶ 29). Plaintiff passed out shortly after arriving at the clinic and had an oxygen mask on his face and IV tube when he woke up. The medical staff sent him to St. Francis where he was treated for an allergic reaction to Lisinopril. (Compl. ¶¶ 30-31). He alleges he suffers from recurring nightmares and PTSD and is afraid to take any medication. (Compl. ¶ 32). He claims this incident was never reported or written up properly. (Compl. ¶ 34).

*Baker v. Camarillo*, No. 17-12095, 2019 WL 2743964, at *1 (D.N.J. July 1, 2019). The claims remaining against the Moving Defendants are:

1. Deliberate indifference to plaintiff's medical needs pursuant to the New Jersey Civil Rights Act ("NJCRA"
2. Deliberate indifference to plaintiff's medical needs pursuant to Section 1983
3. Failure to protect plaintiff pursuant to Section 1983
4. Failure to protect plaintiff pursuant to the NJCRA
5. Medical malpractice under the New Jersey Tort Claims Act ("NJTCA")

(*See* ECF 70 at 1).

On July 1, 2019, this Court appointed Plaintiff an attorney. (*See* ECF 29). On August 31, 2020, Moving Defendants filed a motion for summary judgment. (*See* ECF 58). Moving Defendants do not contest the underlying facts giving rise to Plaintiff's complaint. Instead, their motion for summary judgment makes three procedural arguments:

2

1. Plaintiff failed to exhaust his administrative remedies.
2. Plaintiff failed to comply with the requirements of the affidavit of merit statute under state law.
3. Plaintiff failed to comply with the notice requirements of the New Jersey Tort Claims Act.

Plaintiff filed a response to the motion for summary judgment on September 21, 2020. (*See* ECF 60-62). Plaintiff's response though only addressed Moving Defendants' failure to comply with the affidavit of merit statute. (*See* ECF 62).

On October 16, 2020, Moving Defendants filed a reply brief in support of their motion for summary judgment. (*See* ECF 67). Moving Defendants' reply brief noted Plaintiff's response did not oppose their motion for summary judgment with respect to the affidavit of merit statute nor their lack of administrative exhaustion argument. (*See id.*)

On October 20, 2020, Plaintiff filed a letter, which this Court construes as a sur-reply. While sur-replies are typically only permitted with leave of court, *see* L. Civ. R. 7.1(d)(6), this Court will permit the sur-reply in this instance. Plaintiff's sur-reply continued to ignore Moving Defendants' lack of administrative exhaustion argument. Instead, Plaintiff argued Moving Defendants' affidavit of merit argument was inconsistent with previous orders entered by Magistrate Judge Arpert.

On June 8, 2021, this Court ordered the parties to supplement their briefs. Most relevant to this opinion, Plaintiff states he is not conceding that he failed to exhaust his administrative remedies. (*See* ECF 70 at 1).

### III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing

law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude the Court from granting a motion for summary judgment. *See id.*

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A party asserting that a fact [is not] genuinely disputed must support the assertion by ... citing to particular parts of materials in the record, including depositions, documents ..., affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *See Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)). "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's

evidence 'is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). The Court's role in deciding a motion for summary judgment is simply "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## IV. DISCUSSION

### A. Notice Requirement of NJTCA

One of Moving Defendants' argument is that plaintiff failed to meet the notice requirement of the NJTCA to proceed with his medical malpractice claim. At the outset, the parties conceded during oral argument that the notice requirement of the NJTCA only applies to plaintiff's medical malpractice claim, not his federal and state constitutional claims.

> The NJTCA requires that notice of a claim of injury against a public entity be provided "no later than the 90th day after accrual of the cause of action." N.J. Stat. Ann. § 59:8–8. The NJTCA notice requirement has several rationales. It "allows the public entity time to review the claim and to promptly investigate the facts and prepare a defense; provides them an opportunity to settle meritorious claims before bringing suit; grants them an opportunity to correct the conditions which gave rise to the claim; and allows them to inform the State in advance as to the expected liability." *Evans v. Gloucester Twp.*, 124 F. Supp. 3d 340, 354 (D.N.J. 2015) (citing *Velez v. City of Jersey City*, 180 N.J. 284, 290, 850 A.2d 1238 (2004)).
>
> Failure to comply with the NJTCA notice requirement precludes recovery against both a public employee and a public entity. *See Velez*, 180 N.J. at 296, ("Although we note that the better practice is for a potential plaintiff to give notice to both the public entity and the public employee, N.J. Stat. Ann. § 59:8–8 only requires that notice be given to the public entity.). A plaintiff who fails to file such a claim within the 90-day period is "forever barred from recovering against a public entity or public employee." N.J. Stat. Ann. § 59:8–8.

> There is a potential avenue of relief from the 90-day deadline . . . A plaintiff can file a motion with the court requesting permission to file a late notice of claim, which will be granted if "extraordinary circumstances" excuse late filing. N.J. Stat. Ann. § 59:8–9. An application to file a late notice must be filed within one year after the accrual of the claim. *See id.*

*Lozano v. New Jersey*, No. 17-6581, 2020 WL 3542374, at *14 (D.N.J. June 29, 2020).

Plaintiff admits he did not file his notice of tort claim within ninety days. Instead, he argues he filed a notice of tort claim on June 6, 2017, or within one year of the date of the incident. Therefore, according to Plaintiff, he satisfied the late notice requirement. With respect to not complying with filing a notice of tort claim within ninety days, the relevant New Jersey statute permits as follows:

> A claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 of this act, may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed by section 59:8-8 of this act or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter; provided that in no event may any suit against a public entity or a public employee arising under this act be filed later than two years from the time of the accrual of the claim.

N.J. Stat. Ann. § 59:8-9.

Filing a late notice of tort claim, as plaintiff did in this case, without leave of court is a nullity and does not constitute substantial compliance with § 59:8-9. *See Rogers v. Cape May Cty. Office of Public Defender*, 31 A.3d 934, 941-42 (N.J. 2011). Thus, merely because plaintiff filed a notice of tort claim after ninety days, but within one year as opposed to an application for

permission to file a late notice of tort claim, is insufficient in and of itself to comply with the statute.

Plaintiff's alternative argument is to grant him leave *nunc pro tunc* to seek such a request to file a late notice of tort claim. Plaintiff provides no caselaw to permit this Court to grant such a request *nunc pro tunc* so many years after the purported tort occurred. Furthermore, even if this Court were inclined to consider such a request, plaintiff would still need to show extraordinary circumstances for this Court to grant such a late request. "What constitutes "extraordinary circumstances" is inherently imprecise and must be determined on a case-by-case basis." *Jeffrey v. State*, No. A-1187-18, 2021 WL 1975175, at *3 (N.J. Super. Ct. App. Div. May 18, 2021) (citing *O'Donnell v. New Jersey Tpk. Auth.*, 236 N.J. 335, 347, 199 A.3d 786 (2019). While extraordinary circumstances are not defined by the statute, Plaintiff makes no argument whatsoever regarding what constituted extraordinary circumstances to warrant this Court granting his request to consider his request to excuse his late notice of tort claim *nunc pro tunc*. Accordingly, Moving Defendants are entitled to summary judgment on Plaintiff's medical malpractice claim.[1]

B. <u>Exhaustion</u>

Moving Defendants next argue they are entitled to summary judgment because plaintiff's federal and state constitutional claims are unexhausted. Under the Prison Litigation Reform Act, ("PLRA"), prisoners must exhaust 'such administrative remedies as are available' before

---

[1] Given that this Court is granting Moving Defendants motion due to plaintiff's lack of tort claim notice, this Court need not analyze Moving Defendants' alternative argument that they are entitled to summary judgment on plaintiff's medical malpractice claim due to plaintiff's purported failure to complete an affidavit of merit.

bringing suit to challenge prison conditions."[2] *Ross v. Blake*, 136 S. Ct. 1850, 1854–55 (2016) (quoting 42 U.S.C. § 1997e(a)). "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Id.* at 1856 (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2007)). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). This includes constitutional claims, *Woodford*, 548 U.S. at 91 n.2, and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion must be proper, meaning "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88). "A prisoner must exhaust these remedies 'in the literal sense[;]' no further avenues in the prison's grievance process should be available." *Smith v. Lagana*, 574 F. App'x 130, 131 (3d Cir. 2014) (quoting *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004)). A district court may decide whether a plaintiff exhausted his administrative remedies without a jury even if there are disputed facts after providing notice to the parties and an opportunity to submit further evidence. *Paladino v. Newsome*, 885 F.3d 203, 211 (3d Cir. 2018); *Small v. Camden Cty.*, 728 F.3d 265, 270 (3d Cir. 2013). "Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff." *Small*, 728 F.3d at 268.

---

[2] New Jersey has a similar exhaustion requirement under state law. *See* N.J. Admin. Code § 10A:1-4.4(d).

Moving Defendants previously unsuccessful sought summary judgment due to plaintiff's purported lack of exhaustion. In denying Moving Defendants' previous motion for summary judgment, this Court noted that:

> [d]efendants have failed to meet their burden of proof [on their lack of exhaustion argument]. Their statement of material facts do not cite to any portion of the record supporting their statement that Plaintiff failed to exhaust his remedies. (ECF No. 17-2 at 5 ¶ 21). They have not submitted any admissible evidence by anyone with knowledge of the prison's grievance procedure and/or Plaintiff's submissions. There is no evidence attesting to the reliability of NJSP's recordkeeping system. *See Paladino*, 885 F.3d at 211 (holding that success of failure to exhaust argument based on the absence of any form "depends on the reliability of the Prison's recordkeeping system").

*Baker*, 2019 WL 2743964, at *4.

As noted by Plaintiff's counsel during oral argument on this motion, Moving Defendants instant motion for summary judgment suffers from similar defects as did their previous attempt. Indeed, Moving Defendants' current statement of material facts again lacks any citation to the record that plaintiff did not exhaust his administrative remedies. (*See* ECF 58-1). Moving Defendants' current motion also similarly lacks admissible evidence by anyone with knowledge of NJSP's grievance procedure. In their reply, Moving Defendants assert there is no challenge to the reliability of the prisons record keeping. However, as an affirmative defense and as the moving party in this motion for summary judgment, Moving Defendants have the burden to prove lack of exhaustion. *See Tormasi v. Lanigan*, 363 F. Supp. 3d 525, 536 (D.N.J. 2019) (citations omitted). Moving Defendants' Exhibit B to their motion appears to be a list of communications of Plaintiff's grievances. However, this attachment lacks any corresponding certification from a custodian of this record or even a certification from counsel that this exhibit constitutes the *full extent* of Plaintiff's grievances. Finally, as with Moving Defendants' previous

motion, Moving Defendants fail to include relevant information in the record regarding the administrative exhaustion process at NJSP.

Given these continued deficiencies, this Court cannot grant Moving Defendants summary judgment due to lack of exhaustion at this time. These continued deficiencies in Moving Defendants' motion require this Court to conclude the burden has not yet ever shifted to Plaintiff because Moving Defendants have yet to adequately support their motion on lack of exhaustion. Nevertheless, this Court will deny this portion of Moving Defendants' motion without prejudice. Moving Defendants shall be given one final opportunity to correct the deficiencies in their lack of exhaustion argument, to the extent they can or elect to do so. Moving Defendants shall be given thirty days to file such a motion.

## CONCLUSION

For the foregoing reasons, Moving Defendants' motion for summary judgment is granted in part. Moving Defendants are granted summary judgment on plaintiff's medical malpractice claim. The remainder of Moving Defendants' motion is denied without prejudice. Moving Defendants' may attempt to reargue lack of exhaustion in another motion for summary judgment that must be filed within thirty days. An appropriate order will be entered.

DATED: 9/9/21

PETER G. SHERIDAN
United States District Judge