UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCOTT BAKER, | : |
| Plaintiff, | : Civ. No. 17-12095 (PGS)(DEA) |
| v. | : |
| JOY CAMARILLO, et al., | : OPINION |
| Defendants. | : |

**PETER G. SHERIDAN, U.S.D.J.**

### I. INTRODUCTION

Plaintiff, Scott Baker ("Plaintiff"), is a state prisoner currently incarcerated at the New Jersey State Prison ("NJSP") in Trenton, New Jersey. He is proceeding through appointed counsel with a civil rights complaint against several remaining defendants, namely: (1) Joy Camarillo; (2) Ihuoma Nwachukwu; (3) University Behavioral Health; and (4) Rutgers, the State University of New Jersey (hereinafter collectively "Defendants"). Presently pending before this Court is the Moving Defendants' motion for summary judgment. For the following reasons, the motion is granted.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was initially *pro se*, filed his Complaint in Mercer County Superior Court in June 2017. Defendants removed the case to this Court in November 2017. As this Court previously noted in a prior opinion, the Complaint alleges as follows:

> According to the Complaint, Plaintiff has been incarcerated since at least 2016 and has been taking Lisinopril for high blood pressure. He was taken to UMDNJ on May 13, 2016 for a spinal injection procedure unrelated to his high blood pressure, at which time a surgeon told him Lisinopril was a "bad drug." (Compl. ¶ 17). The surgeon told Plaintiff he should be taken off Lisinopril as it "was

> dangerous and was not working." (Compl. ¶ 18). Plaintiff asked defendant Joy Camarillo, an APN at NJSP, to prescribe a different medication and she agreed. (Compl. ¶ 19). Plaintiff alleges that instead of giving him a different medicine, Camarillo doubled his dosage of Lisinopril. (Compl. ¶ 20).
>
> On June 9, 2016, Plaintiff's lip began to swell and he had difficulty swallowing. He had a headache and trouble breathing. He assumed he was getting sick and went to bed early. He awoke early the next morning unable to breathe. (Compl. ¶¶ 21-22). A nurse saw Plaintiff's distress and notified the Wing Officer that Plaintiff had to go to the prison clinic immediately. (Compl. ¶¶ 23-24). The Wing Officer called defendant Supervising Officer Doe, who told Plaintiff he could not go to the clinic until after count ended approximately one hour later. (Compl. ¶ 25). Plaintiff went to the clinic at the conclusion of count at roughly 6:30 a.m. on an emergency pass. (Compl. ¶ 27). Plaintiff needed assistance to the clinic because he collapsed on his way there. (Compl. ¶ 29). Plaintiff passed out shortly after arriving at the clinic and had an oxygen mask on his face and IV tube when he woke up. The medical staff sent him to St. Francis where he was treated for an allergic reaction to Lisinopril. (Compl. ¶¶ 30-31). He alleges he suffers from recurring nightmares and PTSD and is afraid to take any medication. (Compl. ¶ 32). He claims this incident was never reported or written up properly. (Compl. ¶ 34).

*Baker v. Camarillo*, No. 17-12095, 2019 WL 2743964, at *1 (D.N.J. July 1, 2019).

On March 8, 2018, the Court granted an unopposed motion to dismiss filed by the New Jersey Department of Corrections ("NJDOC") and NJSP. (ECF No. 11.) The Court permitted Plaintiff to move to reinstate Counts Nine and Ten, which raised claims under the New Jersey Tort Claims Act ("NJTCA"). (*Id.*) Plaintiff failed to file an amended complaint on those counts. As such, the Court dismissed all claims against NJDOC and NJSP on July 1, 2019. (ECF No. 31.)

In September 2018, Defendants moved for summary judgment on Plaintiff's remaining counts against them. (ECF No. 17.) The Court dismissed Plaintiff's Eighth Amendment claim against Dr. Nwachukwu and denied the remainder of the motion for summary judgment. (ECF No. 31.)

2

On July 1, 2019, the Court appointed Plaintiff counsel. (*See* ECF No. 29.) On August 31, 2020, Defendants filed a motion for summary judgment, raising three procedural arguments. (*See* ECF No. 58.) On September 9, 2021, the Court dismissed Plaintiff's medical malpractice claim against Defendants for failure to comply with the NJTCA but denied summary judgment as it related to Defendants' argument regarding lack of exhaustion of Plaintiff's administrative remedies. (*See* ECF No. 74.)

Plaintiff's state and federal constitutional claims remain against Defendants. On October 15, 2021, Defendants filed the instant motion for summary judgment, seeking dismissal of Plaintiff's remaining claims. (ECF No. 76.) Defendants argue Plaintiff has failed to exhaust his administrative remedies. (*See* ECF No. 76-4.) On December 6, 2021, Plaintiff filed an opposition to Defendants' motion for summary judgment. (ECF No. 83.) On December 27, 2021, Defendants filed a reply to Plaintiff's opposition. (ECF No. 87.)

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude the Court from granting a motion for summary judgment. *See id.*

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A party asserting that a fact [is not] genuinely

disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents . . ., affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *See Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)). "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). The Court's role in deciding a motion for summary judgment is simply "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## IV. DISCUSSION

Defendants argue Plaintiff's remaining federal, and state constitutional claims are procedurally barred because he failed to exhaust his administrative remedies.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016); *Ball v. Famiglio*, 726 F.3d 448, 456 (3d Cir. 2013), *abrogated on other grounds by Coleman v. Tollefson*, 135 S. Ct. 1759 (2015). "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross*, 136 S.Ct. at 1856 (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2007)). This includes constitutional claims, *Woodford*, 548 U.S. at 91 n.2, and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion must be proper, meaning "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88). "A prisoner must exhaust these remedies 'in the literal sense[;]' no further avenues in the prison's grievance process should be available." *Smith v. Lagana*, 574 F. App'x 130, 131 (3d Cir. 2014) (quoting *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004)). A district court may decide whether a plaintiff exhausted his administrative remedies without a jury even if there are disputed facts after providing notice to the parties and an opportunity to submit further evidence. *Paladino*

5

*v. Newsome*, 885 F.3d 203, 211 (3d Cir. 2018); *Small v. Camden Cty.*, 728 F.3d 265, 270 (3d Cir. 2013).

Although exhaustion is mandatory under the PLRA, the statute also contains "a textual exception" to mandatory exhaustion. *See Ross*, 136 S.Ct. at 1858. "Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *See id.* In *Ross v. Blake*, the Supreme Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *See id.* at 1859. "First, . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859 (citing *Booth v. Churner*, 532 U.S. 731, 736 (2001)). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 1850. "And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *See id.* In addition, the Third Circuit has held that the failure to respond in accordance with the prison's procedural rules to a properly-filed grievance renders administrative remedies unavailable. *See Robinson v. Superintendent Rockview*, SCI, 831 F.3d 148, 154 (3d Cir. 2016).

"Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff." *Small*, 728 F.3d at 268. Once a defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate

6

to show that such remedies were unavailable to him. *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018).

Moving Defendants previously unsuccessfully sought summary judgment due to Plaintiff's purported lack of exhaustion. In denying Moving Defendants' previous motion for summary judgment, this Court noted that:

> Moving Defendants' current statement of material facts again lacks any citation to the record that plaintiff did not exhaust his administrative remedies. (*See* ECF 58-1). Moving Defendants' current motion also similarly lacks admissible evidence by anyone with knowledge of NJSP's grievance procedure. In their reply, Moving Defendants assert there is no challenge to the reliability of the prisons record keeping. However, as an affirmative defense and as the moving party in this motion for summary judgment, Moving Defendants have the burden to prove lack of exhaustion. *See Tormasi v. Lanigan*, 363 F. Supp. 3d 525, 536 (D.N.J. 2019) (citations omitted). Moving Defendants' Exhibit B to their motion appears to be a list of communications of Plaintiff's grievances. However, this attachment lacks any corresponding certification from a custodian of this record or even a certification from counsel that this exhibit constitutes the full extent of Plaintiff's grievances. Finally, as with Moving Defendants' previous motion, Moving Defendants fail to include relevant information in the record regarding the administrative exhaustion process at NJSP.

*Baker v. Camarillo*, No. 17-12095, 2021 WL 4099876, at *5 (D.N.J. September 9, 2021).

For the purpose of this motion, Defendants have now submitted a Declaration of Fathom Borg, the Executive Assistant and Inmate Remedy Coordinator at New Jersey State Prison and a statement of material facts citing to that declaration. (*See* ECF Nos. 76-2, ("Borg Decl.") & 76-3 (Statement of Material Facts ("SOMF".)) Defendants' statement of material facts asserts the 2016 NJSP Inmate Handbook ("Inmate Handbook") was in effect in May and June 2016 and remained in effect in 2017, the time period relevant in this matter. (SOMF ¶ 10, citing Borg. Decl. ¶ 16.) Plaintiff claims that because Borg's Declaration does not provide a date for when the 2016 Inmate Handbook became effective, Defendants fail "to establish that the excerpts referenced are the

appropriate excerpts regarding the procedure for inmate complaints." (ECF No. 83 at 9.) Plaintiff's assertion is unavailing. Defendants' have provided Borg's Declaration, in which he certifies that the 2016 Inmate Handbook was in effect at the time period relevant in this matter. (Borg. Decl. ¶ 16.) Plaintiff fails to cite to any evidence from the record to the contrary and makes only the above referenced argument in his brief in opposition.[1]

Expressing a general disagreement "without identifying the facts disputed *and* without [citing] to evidence in the record that raises an issue of fact regarding that point, is insufficient to survive summary judgment." *Malik v. Hannah*, 799 F.Supp. 2d 355, 358 (D.N.J. 2011) (emphasis added*); see, e.g., Juster Acquisition Co., LLC v. N. Hudson Sewerage Auth.*, No. 12–3427, 2014 WL 268652, at *5 n. 4 (D.N.J. Jan. 23, 2014) (admonishing the defendant for falsely claiming that facts were in dispute, and noting that "any statement that is not explicitly denied with a proper citation to the record in a responsive Rule 56.1 statement is deemed admitted.") As such, it remains an undisputed fact that the 2016 Inmate Handbook was in effect during the relevant time period at issue in this case.

Fathom Borg certifies in the Declaration that to the best of her knowledge when NJSP issues a new inmate handbook, copies are provided to inmates housed at NJSP. (Borg's Decl. ¶ 9.) Plaintiff argues in his opposition brief that this statement is not evidence that Plaintiff was in fact given a copy of the 2016 Inmate Handbook. (ECF No. 83 at 9.) However, Plaintiff again fails to point to any evidence in the record that would dispute Defendants' assertion that Plaintiff would have received the 2016 Inmate Handbook. Notably, Plaintiff does not allege in his opposition brief that he did not receive a copy of the Handbook, nor does he submit an affidavit to this affect.

---

[1] As Plaintiff did not file a supplemental statement of facts under Local Rule 56.1(a), the Court will only consider the alleged facts in Plaintiff's brief that have proper citations to the record. *See* Fed. R. Civ. 56(c)(1)(A), 56(e); *Malik v. Hannah*, 799 F. Supp. 2d 355, 358 (D.N.J. 2011).

8

Additionally, as explained more below, Plaintiff made use of the Inmate Remedy System during the 2016-2017 time-period, indicating that Plaintiff was aware of the system and the procedures for using it. Without pointing to evidence in the record that would raise an issue of fact as to this point, Plaintiff fails to show this is a disputed material issue of fact. *Malik*, 799 F.Supp. 2d at 358.

Defendants have provided excerpts from the 2016 Inmate Handbook explaining the Inmate Remedy System. (*See* Borg. Decl., Att. A). It is undisputed that the Inmate Remedy System described in the Inmate Handbook is the mechanism for the inmate population to submit complaints, problems, suggestions, etc. to the attention of correctional facility administration for resolution. (SOMF ¶ 12, citing Borg's Decl. ¶ 17). Inmates are required to utilize the Inmate Remedy System before applying to the Court's for relief. (Borg's Decl., Att. A at 17.)[2] Complaints are submitted for resolution through the use of the electronic JPAY system, Inmate Inquiry Form, the Inmate Grievance Form and the Appeal process. (*Id.*) The JPAY system allows inmates to submit inquires and grievances electronically via the unit kiosk and the inmate grievance form is an internal administrative means for the resolution of complaints associated with the conditions of an inmate's confinement. (*Id.*) The Inmate Handbook provides detailed instruction for submitting non-electronic, *i.e.*, paper, Inmate Remedy Forms under the headings "Specific Guidelines for Submitting Inmate Remedy System Forms[]" and "Completing the Inmate Remedy Form[.]" (*See Id.* at 18-19).

Once a remedy form is completed, there is a thirty-day period for processing the administrative remedy form. (Borg's Decl. ¶ 27). If an inmate is dissatisfied with the response to the remedy form, he may file an appeal within ten days of receipt of the response. (Borg's Decl., Att. A at 19.) The Administrator will have ten working days to answer the appeal. (*Id.*) The

---

[2] Pin cites to Attachment A refer to pagination numbers assigned by the Court's electronic filing system.

decision of the Administrator is the final level of review by the New Jersey Department of Corrections. (*Id.*)

It is undisputed that Ms. Borg conducted a search of the NJSP Inmate Remedy System records and Defendants have provided copies of all submissions made by Plaintiff in the system during the relevant 2016 and 2017 timeframe. (SOMF ¶¶ 21, 22, citing Borg. Decl. ¶ 55 and Att. B.) It is also undisputed that between 2016 and 2017, Plaintiff submitted a total of seven (7) Inmate Remedy Forms, which "constitute the 'full extent' of Inmate Remedy Forms submitted by Plaintiff in the Inmate Remedy System" during that time. (*Id.* ¶ 23, citing Borg. Decl. ¶ 56.) Defendants' Statement of Material Facts submits following summary of Plaintiff's seven Inmate Remedy Forms:

    a. On March 4, 2016, Plaintiff submitted an Inmate Inquire Form (Ref#089068) stating that the sink in his cell was leaking and requesting that same be repaired. On March 8, 2016, Plaintiff's sink was repaired and this form was closed. *See* Borg Declaration, ¶ 57; *see also* Attachment B.
    b. On April 15, 2016, Plaintiff submitted an Inmate Inquiry Form (Ref#112189) stating that he received a birthday card from his daughter [that] was damaged. A response was provided on April 26, 2016 and this form was closed. *See* Borg Declaration, ¶ 58; *see also* Attachment B.
    c. On May 3, 2016, Plaintiff submitted an Inmate Remedy Inquiry Form (Ref#122872) stating that his anxiety medication had expired and requesting that same be renewed. Plaintiff's medication was renewed on May 3, 2016 and this form was closed on May 5, 20[]16. *See* Borg Declaration, ¶ 59, *see also* Attachment B.
    d. On August 3, 2016, Plaintiff submitted an Inmate Inquire Form (Ref#183993) stating that he needed his various medications renewed. On August 3, 2016, Plaintiff's medication were confirmed to be current and this form was closed. *See* Borg Declaration, ¶ 60; *see also* Attachment B.
    e. On July 23, 2017, Plaintiff submitted an Inmate Inquiry Form (Ref#537094) stating that he had not received his mental health medication. A response was provided and this form closed on July 25, 2017. *See* Borg Declaration, ¶ 61; *see also* Attachment B.

    f. On October 7, 2017, Plaintiff submitted an Inmate Inquiry Form (Ref#630825) stating that he intended to serve a lawsuit against U.C.H.C., U.M.D.N.J., and members of the medical staff. Plaintiff requested the service address for these entities and individuals and was provided with same and this form closed on October 20, 2017. *See* Borg Declaration, ¶ 62, *see also* Attachment B.

    g. [On] October 7, 2017, Plaintiff also submitted a separate Inmate Inquiry Form (Ref#630826) stating that the shelf had fallen off the wall in his cell. A response was provided on October 20, 2017 and this form was closed. *See* Borg Declaration, ¶ 63; *see also* Attachment B.

(SOMF ¶23, a-f.) It is undisputed that on or about September 21, 2017, Plaintiff filed his Complaint in the Mercer County Superior Court. (*Id.* ¶ 29, citing ECF No. 1-4.) It is undisputed that during the 2016-2017 time period Plaintiff did not submit any grievance forms, submitting only inquiry forms. (*Id.* ¶¶ 24-26.)

Defendants argue that the only Inmate Inquiry form that could be associated with this matter is Plaintiff's October 7, 2017 Inmate Inquiry Form (Ref#630825). (ECF No. 76-4 at 24.) As summarized above, that inquiry form requests the service address of U.C.H.C., U.M.D.N.J., and members of the medical staff. Defendants argue that the inquiry form does not contain any information describing his underlying concern nor any request for redress administratively. (*Id.*) More importantly, Defendants submit that this inquiry form was filed after Plaintiff had already initiated his civil ligation in this matter. (*Id.* at 24-25.) Defendants argue this evidence shows Plaintiff has failed to exhaust his administrative remedies in this matter.

Plaintiff does not dispute that he failed to exhaust his administrative remedies by failing to file a grievance form regarding this matter. Rather, Plaintiff argues that his failure to exhaust should be excused. (ECF No. 83 at 9-11.) Plaintiff argues first that he did not know about the administrative grievance procedure and that Defendants have not presented evidence to the contrary. Plaintiff supports this argument by submitting the fact that Plaintiff went to the law

11

library fourteen times after the incident, which he believes shows that he was unaware of the administrative rules that he must submit a grievance form for this type of incident. (*Id.* at 9-10.) Plaintiff also argues that when he submitted the inquiry form requesting service addresses, the Administration should have informed Plaintiff that he had not exhausted his administrative remedies.

Plaintiff's argument that he was unaware of the remedy procedures is unconvincing. Defendants have submitted Plaintiff's seven inquiry forms as evidence that Plaintiff was aware of and had access to the Inmate Remedy System. Additionally, that Plaintiff was allegedly unaware of the procedures for exhaustion regarding his claims here is insufficient to excuse this failing. *See, e.g., Tirado v. Dep't of Corr.*, No. 13-1709, 2014 WL 5860598, at *4 (W.D. Pa. Nov. 12, 2014) (citing *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2003), for the proposition that "ignorance or confusion regarding . . . [prison grievance] policies does not excuse failure to adhere" to proper exhaustion requirements); *see also Stokes v. Wenerowicz*, No. 13-7093, 2017 WL 3226863, at *4 (E.D. Pa. July 31, 2017); *Miller v. Schuylkill Cty. Prison*, No. 07-0331, 2007 WL 3342766, at *1 (M.D. Pa. Nov. 9, 2007) ("an inmate's subjective lack of awareness regarding administrative remedies will not excuse" his failure to exhaust). Instead, his failure to exhaust could only be excused if he could meet the exceptions to exhaustion.

In that regard, Plaintiff's second argument is that the grievance procedure was unavailable to him. Plaintiff argues that the Inmate Remedy System is confusing to an ordinary prisoner and practically incapable of use. Plaintiff's argument is belied by the fact that Plaintiff understood and used the system seven times during the relevant time period. Plaintiff has not submitted evidence to show that the administrative remedies were in any way unavailable to him. *See, e.g., Ross*, 136 S.Ct. at 1859-61; *see also Paladino*, 885 F.3d at 208 (explaining that "vague[ ]" assertions "without

providing any specifics" on the issue of exhaustion is insufficient to establish a genuine dispute of material fact).

Plaintiff has thus not shown any valid basis on which this Court can excuse his failure to exhaust his claims, and Plaintiff's remaining federal and state constitutional claims – all of which are subject to the exhaustion requirement – must be dismissed for failure to exhaust. The Court, therefore, grants Defendants' motion for summary judgment.

## V. CONCLUSION

For the reasons expressed above, the Court will grant Defendants' motion for summary judgment (ECF No. 76) and will dismiss this matter for failure to exhaust administrative remedies. An appropriate order follows.

DATED: June 6, 2022

_____
PETER G. SHERIDAN
United States District Judge